**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

JOEL ROSS SEMPIER,

     Petitioner,

v.

RENEE BAKER, et al.,

     Respondents.

Case No.: 3:18-cv-00465-RCJ-WGC

**Order**

     Joel Ross Sempier, a Nevada prisoner, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. This Court denies Sempier's habeas petition, grants him a certificate of appealability, and directs the Clerk of the Court to enter judgment accordingly.

**I.**    **BACKGROUND**

     Sempier's convictions are the result of events that occurred in Washoe County, Nevada on August 26, 2011. ECF No. 25-7. The victim testified that Sempier was a cousin of her neighbors, James and Steve Cuevas. ECF No. 26-1 at 9, 17. The victim had met Sempier on approximately three occasions prior to August 25, 2011. *Id.* at 18. On that date, Sempier and his roommate, Richard Vigil, along with Steve Cuevas came over to the victim's house in the evening and were drinking beer with the victim and her husband. *Id.* at 37–38. Cuevas and Vigil left around 8:00

p.m., but Sempier stayed and continued drinking and hanging out. *Id.* at 39–40, 44. Sempier was invited to sleep at the victim and her husband's house since the victim "didn't feel that it was safe for anybody to be driving." *Id.* at 45–46. The victim went to bed around midnight but was awoken between 3:00 a.m. and 3:15 a.m. "to feel a penis inside of [her] vagina." *Id.* at 47, 53, 59. The victim "felt a wet liquid substance on the inner side of [her] thigh," and then "hear[d] in [her] bathroom the toilet paper roll spin" and felt "tissue wiping the wet substance off of [her] leg." *Id.* at 53. The victim initially believed that the sexual encounter was with her husband, but when she turned over, she "saw [Sempier] exiting [her] room." *Id.* at 54–55. After wrapping herself in a blanket, the victim went into the hallway and yelled at Sempier to get out of the house. *Id.* at 56–57.

Sempier testified to a different version of events on the morning of August 26, 2011. While hanging out with the victim and her husband at their residence on August 25, 2011, Sempier explained that the victim was flirting with him. ECF No. 27-1 at 237, 242. Because he had been drinking, the victim invited Sempier to spend the night on a couch. *Id.* at 245. After the victim went to bed, Sempier and the victim's husband went to 7-Eleven to get more beer and then went to a casino. *Id.* at 243–44, 247. After returning from the casino, Sempier and the victim's husband drank more beer and watched a movie before falling asleep in the living room. *Id.* at 249–50.

Sempier woke up approximately 40 minutes later to use the restroom. *Id.* at 251. After exiting the restroom, Sempier heard the victim ask from the master bedroom, "Where did you guys go?" *Id.* at 252. Sempier entered the master bedroom through the open door and told the victim that he and her husband had gone to the bar. *Id.* The victim then asked Sempier to lay next to her in bed, and Sempier complied. *Id.* The victim asked where her husband was located, and when Sempier told her that he was asleep in the living room, the victim said, "Oh. Well, scoot closer."

*Id.* at 253. The victim "then began to snug her back end towards closer [sic] to [Sempier's] pelvic area and at the same time rub[bed him] on [his] genitalia" while moaning and asking if he liked that. *Id.* Sempier then unzipped his pants, and the victim "beg[a]n to insert [his penis] into her vagina." *Id.* at 254. During this time, Sempier's cellular telephone kept making noise and Sempier was concerned about the amount of noise he and the victim were making, so he told the victim "I can't do this" and that he "need[ed] to go get [his] phone charger." *Id.* at 255. Sempier then "pull[ed] out and [he] believed [he] may have ejaculated." *Id.*

Sempier retrieved his cellular telephone charger from his vehicle outside, and when he returned to the victim's house, the victim "just look[ed] at [him] like [she was] mad at [him], like why did [he] get up and leave in the middle of what was going on." *Id.* at 256. The victim then told her husband that Sampier had raped her, and the victim's husband responded, "You're psycho." *Id.* at 257. The victim then told Sempier to leave. *Id.* Later, during a police interview, Sempier stated that "[t]here's a slim possibility that [the victim] . . . may have mistaken [him] for [her husband]" but he was "pretty positive when [he] walked in that room she realized it was [him]" due to the fact that "she was looking right at [him]." *Id.* at 277, 289.

Following a jury trial, Sempier was found guilty of sexual assault. ECF No. 28-6. Sempier was sentenced to life with the possibility of parole after ten years and to lifetime supervision. ECF No. 28-14. Sempier appealed, and the Nevada Supreme Court affirmed on June 13, 2013. ECF No. 29-4. Remittitur issued on July 10, 2013. ECF No. 29-5.

Sempier filed a state habeas petition and a counseled, supplemental petition on November 7, 2013, and March 24, 2015, respectively. ECF Nos. 29-15, 30-1. Following an evidentiary hearing, the state district court denied Sempier's petition on November 3, 2015. ECF Nos. 34-1, 35-1. Sempier appealed, and the Nevada Court of Appeals dismissed the appeal, concluding that

the state district court's order did not resolve all claims. ECF No. 36-7. On March 31, 2017, the state district court entered an order denying all outstanding claims from Sempier's state habeas petition. ECF No. 36-13. Sempier appealed again, and the Nevada Supreme Court affirmed on July 20, 2018. ECF No. 37-11. Remittitur issued on August 24, 2018. ECF No. 37-13.

Sempier filed a federal habeas petition on February 26, 2019. ECF No. 10. This Court dismissed Ground 8 with prejudice as noncognizable and ordered the Respondents to file a response to the remaining claims in the petition. ECF No. 9. The Respondents answered Sempier's petition on September 9, 2019. ECF No. 21. Sempier replied on November 11, 2019. ECF No. 40.

In his remaining grounds for relief, Sempier alleges the following violations of his federal constitutional rights:

1. His trial counsel failed to present exculpatory evidence and interview witnesses or otherwise investigate the case.
2. His trial counsel failed to address the victim's sexual assault examination or consult with, retain, and use an expert regarding the victim's injuries.
3. His trial counsel failed to present an alternative mistaken-consent defense.
4. His trial counsel failed to oppose or otherwise address the State's motion in limine regarding the victim's domestic battery charge.
5. The State relied on the victim's testimony, which it should have known was false, or, alternatively, his trial counsel failed to address inconsistencies in the victim's testimony.
6. There were cumulative errors.
7. His trial counsel failed to preserve issues for appeal.

ECF No. 10.

## II.    STANDARD OF REVIEW

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409–10) (internal citation omitted).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating

1  state-court rulings, which demands that state-court decisions be given the benefit of the doubt"

2  (internal quotation marks and citations omitted)).

3  **III.    DISCUSSION**

4         Apart from a portion of Ground 5, Sempier's remaining claims assert that his trial counsel

5  was ineffective. In *Strickland*, the Supreme Court propounded a two-prong test for analysis of

6  claims of ineffective assistance of counsel requiring the petitioner to demonstrate (1) that the

7  attorney's "representation fell below an objective standard of reasonableness," and (2) that the

8  attorney's deficient performance prejudiced the defendant such that "there is a reasonable

9  probability that, but for counsel's unprofessional errors, the result of the proceeding would have

10 been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). A court considering a

11 claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct

12 falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner's

13 burden is to show "that counsel made errors so serious that counsel was not functioning as the

14 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Additionally, to establish

15 prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had

16 some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the errors must be

17 "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

18        Where a state court previously adjudicated the claim of ineffective assistance of counsel

19 under *Strickland*, establishing that the decision was unreasonable is especially difficult. *See*

20 *Harrington*, 562 U.S. at 104–05. In *Harrington*, the United States Supreme Court clarified that

21 *Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem, review is

22 doubly so. *Id.* at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal

23 quotation marks omitted) ("When a federal court reviews a state court's *Strickland* determination

under AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme Court's description of the standard as doubly deferential."). The Supreme Court further clarified that, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

This Court will now address Sempier's seven remaining claims in turn.

**A.   Ground 1**

In Ground 1, Sempier argues that his trial counsel failed to present exculpatory evidence and interview witnesses or otherwise investigate the case. ECF No. 10 at 3. Specifically, Sempier argues that his trial counsel should have played a recording made of the victim and her husband following the sexual assault as well as the 9-1-1 tape recording and called for the testimony from the victim's neighbors. Sempier argues that this evidence would have revealed that the victim had sexual relationships with men other than her husband during their marriage, that her husband did not initially believe she was sexually assault, and that the victim had a motive to lie because she had just recently gotten back together with her husband following a separation. *Id.* at 31–34. Sempier asserts that this evidence would have been allowed as evidence in his trial as an exception to the rape shield statute because it was for purposes of addressing credibility. *Id.* at 34 (citing, in part, Nev. Rev. Stat. §§ 48.069 and 48.045). Sempier also asserts that his trial counsel should have investigated the fact that the victim's husband apologized to his neighbors, relatives of Sempier, which again demonstrated that he did not believe that his wife had been assaulted; investigated the fact that the victim had reportedly flirted with Sempier prior to the sexual assault; and investigated a similar incident whereby the victim had a sexual encounter with another one of her husband's friends after a night of drinking. *Id.* at 39–42.

Ground 1 is more easily addressed when broken down into subparts. However, before moving into the subparts of Ground 1, this Court notes that defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. Additionally, "[i]n any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* This investigatory duty includes investigating the defendant's "most important defense" (*Sanders v. Ratelle*, 21 F.3d 1446, 1457 (9th Cir. 1994)), and investigating and introducing evidence that demonstrates factual innocence or evidence that raises sufficient doubt about the defendant's innocence. *Hart v. Gomez*, 174 F.3d 1067, 1070 (9th Cir. 1999). "[I]f counsel's failure to investigate possible methods of impeachment is part of the explanation for counsel's impeachment strategy (or a lack thereof), the failure to investigate may in itself constitute ineffective assistance of counsel." *Reynoso v. Giurbino*, 462 F.3d 1099, 1112 (9th Cir. 2006).

### 1.   Ground 1(a): evidence of the victim's troubled marriage

In affirming the denial of Sempier's state habeas petition, the Nevada Supreme Court held:

Sempier claims that trial counsel should have investigated and presented evidence showing that the victim and her husband had a volatile relationship and the victim had a pattern of acting irrationally in an attempt to elicit attention from her husband and manipulate or punish him. Specifically, Sempier points to the following evidence: testimony that the victim on one occasion confronted her husband at a bar and expressed anger that he was out drinking with friends; testimony that the victim had sexual relationships with other men during her marriage and that she and her husband drank and fought a lot; an audio recording of an argument between the victim and her husband occurring a few days after the sexual assault; and a domestic-abuse incident between the victim and her husband occurring after the sexual assault. Sempier claims that this evidence proves that the victim was a troubled individual who had a motive to make up allegations of sexual assault. Sempier fails to demonstrate that counsel's performance was deficient. Trial counsel testified at the evidentiary hearing that the theory of defense at trial was that Sempier and the victim had consensual sex but the victim was worried that her husband would find out and therefore made up the allegations about sexual assault

8

in an attempt to save her marriage. At trial, counsel elicited testimony from the victim and her husband that they had been separated and living apart for a year and that the victim had recently moved back in with her husband and was trying to work on their marriage. Though counsel was aware of additional evidence indicating that the victim had a troubled relationship with her husband, he chose not to use that evidence at trial because it was cumulative, inadmissible under Nevada's rape shield statute, or not helpful to his defense. We conclude that Sempier fails to demonstrate that counsel's choice of defense was objectively unreasonable. *See Doleman v. State*, 112 Nev. 843, 848, 921 P.2d 278, 280-81 (1996) (stating that trial counsel's tactical decisions are virtually unchallengeable); *see also Rios v. Rocha*, 299 F.3d 796, 807 (9th Cir. 2002) ("Once counsel reasonably selects a defense, it is not deficient performance to fail to pursue alternative defenses."). Therefore, the district court did not err in denying this claim.

ECF No. 37-11 at 3–4. The Nevada Supreme Court's rejection of Sempier's *Strickland* claim was neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court.

Sempier avers that his trial counsel should have investigated and introduced various pieces of evidence demonstrating the contentious relationship between the victim and her husband. First, Darren Bakondi, the casino manager of Bordertown Casino, testified at the post-conviction evidentiary hearing that weeks prior to the sexual assault, the victim came to the casino while her husband was there with Sempier, Richard Vigil, and the Cuevas brothers because "[s]he was upset he was out drinking with friends and she said he needed to come home and she wasn't leaving unless he left as well." ECF No. 34-1 at 109, 113. Second, Carrie Gillespie, who lived with the Cuevas brothers and Vigil next door to the victim and the victim's husband, recorded a conversation between the victim and the victim's husband a few days after the sexual assault took place. ECF No. 32-1 at 157. In the recording, the victim told her husband, "I'm going to go to [sic] fuck the whole block." *Id.* at 158. The victim's husband responded, "[w]e should call Detective Bowen and have him come over here right now. Maybe he could video - - video-camera this and then put it on fucking recording what we got going on with your bullshit." *Id.* Third, Gillespie and

James Cuevas both had information about the victim's relationship with her husband. Gillespie testified at the post-conviction evidentiary hearing that the victim and her husband would fight constantly about "[h]er sleeping with other guys." ECF No. 34-1 at 125. The day prior to the sexual assault, the victim asked Gillespie what she could do to make her husband stop spending time with another female neighbor. *Id.* at 126. And Cuevas testified at the post-conviction evidentiary hearing that the victim and her husband had a "horrible relationship" and that the victim's husband "kept wondering if [his wife] was cheating on him." *Id.* at 154-55, 165. Fourth, a domestic violence incident occurred between the victim and her husband following the sexual assault, which was brought about because the victim "was upset over the way her husband had responded to her allegation of sexual assault."[1] *Id.* at 45.

Sempier's trial counsel testified at the post-conviction evidentiary hearing that he met with Gillespie, who provided him with the recording that she had made between the victim and the victim's husband. ECF No. 34-1 at 38–40. When asked why he did not use the recording at trial, Sempier's trial counsel responded that he could not "really recall for sure," but he thought he "perceived some reluctance on Ms. Gillespie's part to be part of this proceeding" and he "needed her to authenticate" the recording if it was even admissible in the first place. *Id.* at 40. Sempier's trial counsel's strategy was "to focus on what happened" at the time of the sexual assault, so he "didn't do any investigation about the recording, any further or anything else that happened after the alleged incident." *Id.* at 51. Instead, Sempier's trial counsel argued that the victim needed to fabricate the sexual assault to continue reconciling her relationship with her husband. *Id.* at 55–56.

The Nevada Supreme Court reasonably determined that Sempier's trial counsel was not deficient. *Strickland*, 466 U.S. at 688. As the Nevada Supreme Court reasonably noted, the victim

---

[1] This domestic violence incident is addressed further in Ground 4.

testified at the trial that she was separated from her husband from September 2010 until January 2011 and that she moved out of their residence during that period. ECF No. 26-1 at 87. Therefore, the jury was aware that the victim and her husband were having some difficulties in their marriage and that they were attempting to reconcile at the time of the sexual assault. Sempier's trial counsel could have presented the additional evidence outlined previously to highlight further issues with the couple's relationship; however, highlighting these issues would have tended to negate Sempier's trial counsel's defense that the victim wanted to keep reconciling with her husband and fabricated the sexual assault in order to do so. As the Nevada Supreme Court reasonably determined, this strategy was not objectively unreasonable. *See Harrington*, 562 U.S. at 107 (2011) ("Counsel was entitled to formulate a strategy that was reasonable at the time."). Accordingly, because the Nevada Supreme Court reasonably denied Sempier's ineffective-assistance-of-trial-counsel claim, Sempier is denied federal habeas relief for Ground 1(a).

### 2. Ground 1(b): the victim's husband's disbelief regarding the assault

In affirming the denial of Sempier's state habeas petition, the Nevada Supreme Court held:

> Sempier argues that trial counsel should have presented evidence showing that the victim's husband did not believe the victim's allegations of sexual assault, which would have made the victim less credible. Sempier fails to demonstrate that counsel's performance was deficient or that he was prejudiced. Counsel elicited testimony from the husband that he did not immediately believe the victim when she told him that Sempier raped her. While Sempier contends that counsel should have introduced the victim's 911 call and a police officer's statement, this evidence would have shown only that the husband did not believe the victim when she first reported the offense, which would have been cumulative of the husband's testimony. The other evidence that Sempier alleges should have been presented— the audio recording of an argument between the victim and her husband, a police report about a domestic-abuse incident between the victim and her husband, and testimony by Sempier's cousin that the victim's husband apologized to him days after the sexual assault—did not clearly indicate that the husband did not believe the victim. Furthermore, Sempier has failed to provide this court with an adequate appendix containing the complete trial transcripts for this court's review on appeal. *See* NRAP 30(b)(1) ("Copies of all transcripts that are necessary to the Supreme Court's or Court of Appeals' review of the issues presented on appeal shall be

1   included in the appendix."); NRAP 30(b)(3) (appellant's appendix shall include any
2   "portions of the record essential to determination of the issues raised in appellant's
    appeal"); *Greene v. State*, 96 Nev. 555, 558, 612 P.2d 686, 688 (1980) ("The burden
3   to make a proper appellate record rests on appellant."). Accordingly, Sempier
    cannot demonstrate that the district court erred in concluding he did not show a
    reasonable probability of a different outcome at trial. Therefore, the district court
4   did not err in denying this claim.

5   ECF No. 37-11 at 4–5. The Nevada Supreme Court's rejection of Sempier's *Strickland* claim was

6   neither contrary to nor an unreasonable application of clearly established law as determined by the

7   United States Supreme Court.

8       The victim's husband testified that when his wife woke up him to tell him that she had

9   been raped, he asked if she was "dreaming right now" and told her that she was "being a little

10  psycho because [Sempier is] right here," pointing at a couch in the living room. ECF No. 27-1 at

11  55. However, when the victim's husband "look[ed] at the couch[,] there's nobody there." *Id.* While

12  this evidence demonstrated that the victim's husband did not initially believe the victim's sexual

13  assault allegations, Sempier argues that his trial counsel should have presented further evidence

14  that the victim's husband continued to not believe her, including the audio recording and the

15  domestic violence incident that were discussed in Ground 1(a). Sempier also desired to have his

16  trial counsel introduce testimony from James Cuevas that following the sexual assault, the victim's

17  husband "kind of stumble[d] in[to Cuevas'] house apologizing to [him] right when he got in the

18  house all the way to the kitchen." ECF No. 34-1 at 159.

19      The Nevada Supreme Court reasonably concluded that Sempier failed to demonstrate that

20  his trial counsel acted deficiently. *Strickland*, 466 U.S. at 688. As the Nevada Supreme Court

21  reasonably determined, this additional evidence did not clearly show that the victim's husband did

22  not believe her, so Sempier's trial counsel's failure to introduce this evidence did not fall "below

23  an objective standard of reasonableness." *Id.* First, the victim's husband indicated on the audio

12

1   recording that he should call the detective to show him "what we got going on with your bullshit."

2   ECF 32-1 at 157. It is uncertain from the record to what "bullshit" the victim's husband is referring.

3   Second, while the domestic violence incident was brought about because the victim "was upset

4   over the way her husband had responded to her allegation of sexual assault," it is unclear what

5   response she was unhappy with. ECF No. 34-1 at 45. Third, Cuevas testified that he did not know

6   what the victim's husband was apologizing about when he came over a little while after the sexual

7   assault. ECF No. 34-1 at 159. Therefore, because the Nevada Supreme Court reasonably denied

8   Sempier's ineffective-assistance-of-trial-counsel claim, Sempier is denied federal habeas relief for

9   Ground 1(b).

10                  **3.      Ground 1(c): the victim's affair and accusation of sexual assault**

11          In affirming the denial of Sempier's state habeas petition, the Nevada Supreme Court held:

12          Sempier argues that trial counsel should have investigated and presented evidence
            that the victim had previously had an affair with another man while married and
13          that she had falsely accused that man of sexual assault. Sempier fails to demonstrate
            that counsel's performance was deficient or that he was prejudiced. Evidence that
14          the victim had a sexual relationship four years before the sexual assault had little
            relevance and likely would have been inadmissible under Nevada's rape shield
15          statute, NRS 50.090. While the rape shield statute would not bar evidence of prior
            false accusations of sexual assault, *see Miller v. State*, 105 Nev. 497, 500–01, 779
16          P.2d 87, 89 (1989), the evidence presented at the evidentiary hearing failed to prove
            that the victim had made a false accusation of sexual assault or that counsel should
17          have known about it. Therefore, the district court did not err in denying this claim.

18   ECF No. 37-11 at 5. The Nevada Supreme Court's rejection of Sempier's *Strickland* claim was

19   neither contrary to nor an unreasonable application of clearly established law as determined by the

20   United States Supreme Court.

21          In an affidavit prepared for Sempier's post-conviction proceedings, James McClain stated

22   he went to the victim and the victim's husband's residence in April 2007. ECF No. 32-1 at 182.

23   During that encounter, the victim's husband "drank to the point that he passed out on a couch in

the family room, and "[w]hile [the victim's husband] was passed out, [the victim] came on to [McClain] by inquiring . . . about [his] karate knowledge." *Id.* McClain explained that "[o]ne thing led to another and [he and the victim] had sex on the living room floor while [the victim's husband] was passed out in the family room and their daughter was asleep in her bedroom." *Id.* McClain and the victim "continued an affair for approximately 3–4 months." *Id.*

At the post-conviction evidentiary hearing, Gillespie testified that she thought she "told [Sempier's trial counsel] about" McClain and that the victim "told everybody he raped her." ECF No. 34-1 at 127–28, 132–33. Contrarily, Sempier's trial counsel testified at the post-conviction evidentiary hearing that he had not heard of McClain before reading Sempier's supplemental state habeas petition. *Id.* at 53. However, Sempier's trial counsel also testified that "[b]ased on [his] understanding of Nevada's rape shield law . . . the victim's prior sexual conduct four years prior to [the] alleged sexual assault" would not have been admissible regardless of his knowledge of McClain's existence. *Id.* at 83.

Even if Sempier's trial counsel was deficient for not interviewing McClain after allegedly being told about his existence by Gillespie, the Nevada Supreme Court reasonably determined that Sempier failed to demonstrate prejudice. *Strickland*, 466 U.S. at 694. First, the Nevada Supreme Court, the final arbiter of Nevada law, noted that the victim's relationship with McClain would likely have been inadmissible pursuant to Nevada law. *See* Nev. Rev. Stat. § 50.090 ("In any prosecution for sexual assault . . . the accused may not present evidence of any previous sexual conduct of the victim of the crime to challenge the victim's credibility as a witness."). Second, as the Nevada Supreme Court reasonably noted, there was insufficient evidence presented that the victim accused McClain of raping her. Gillespie's knowledge of the alleged rape came only statements from McClain's wife (ECF No. 34-1 at 127), and, importantly, McClain did not wish

1 to testify at the post-conviction evidentiary hearing and did not posit that he was accused of rape

2 in his affidavit. (*See* ECF No. 34-1 at 21; ECF No. 32-1 at 183.) Thus, because the Nevada

3 Supreme Court reasonably denied Sempier's ineffective-assistance-of-trial-counsel claim,

4 Sempier is denied federal habeas relief for Ground 1(c).

5    **4.  Ground 1(d): the victim's neighbors**

6    In affirming the denial of Sempier's state habeas petition, the Nevada Supreme Court held:

7    Sempier argues that trial counsel should have interviewed and called four witnesses
to testify about the victim's untruthfulness. Sempier fails to demonstrate that
8    counsel's performance was deficient or that he was prejudiced. Counsel testified
that he had spoken to one of the witnesses but decided not to call her as a witness
9    because her statements about the victim were based on rumors and speculation. The
witnesses' testimony at the evidentiary hearing revealed that they had little or no
10    personal knowledge of the victim's character and their opinions regarding her
truthfulness were due to her unfaithfulness to her husband. Sempier fails to
11    demonstrate that counsel's concerns about the admissibility of such evidence was
unreasonable or that there was a reasonable probability of a different result had
12    counsel presented this testimony. Therefore, the district court did not err in denying
this claim.

13

14 ECF No. 37-11 at 5–6. The Nevada Supreme Court's rejection of Sempier's *Strickland* claim was

15 neither contrary to nor an unreasonable application of clearly established law as determined by the

16 United States Supreme Court.

17    In an affidavit, Gillespie stated, "[b]ased upon [her] interactions with [the victim and her

18 husband] and statements made to [her] by [the victim's husband] subsequent to the incident at

19 issue, [she] ha[d] cause to believe that [the victim] accused [Sempier] of sexual assault to

20 manipulate [her husband]." ECF No. 32-1 at 162. And during the post-conviction evidentiary

21 hearing, Gillespie testified that the victim was not truthful, which was based on the victim

22 "cheating on her husband all the time." ECF No. 34-1 at 127, 145. Likewise, James Cuevas stated

23 in an affidavit that the victim had a contentious relationship with her husband and was physically

aggressive to him. ECF No. 32-1 at 164. However, at the post-conviction evidentiary hearing, Cuevas testified that he did not have any personal experience with the victim being truthful or not truthful. ECF No. 34-1 at 164. Finally, in near identical affidavits, Wallace and Amanda Armstrong, neighbors to the victim and her husband, both stated "it was always [their] belief that [the victim] falsely accused [Sempier] of sexual assault for the purpose of disguising her behavior with [Sempier] to [her husband]." ECF No. 32-1 at 167, 170. However, similar to Cuevas, Wallace Armstrong testified at the post-conviction evidentiary hearing that he had not "spent enough time with [the victim] to know if she would be a liar" and did not remember whether he knew of "any instances where [he] found her to be untruthful." ECF No. 34-1 at 173–74. Instead, his doubt regarding the sexual assault was due to the victim's "faithfulness to her husband." *Id.* at 175. Similarly, Amanda Armstrong testified at the post-conviction evidentiary hearing that she was concerned about the victim's truthfulness because the victim "hid relationships." *Id.* at 184–85.

Sempier's trial counsel testified that he spoke to neither James nor Steve Cuevas,[2] but "nobody was really volunteering any information too much besides Ms. Gillespie." ECF No. 34-1 at 50–51. And regarding Gillespie, Sempier's trial counsel simply "got the same vibe from her that Mr. Sempier had been giving [him] about [the victim] being this kind of person, and so [he] wasn't getting anything from her that [he] didn't already sense from the case." *Id.* at 97. In fact, Gillespie and the other neighbors never gave him anything "specific other than the [audio recording]," and while "[t]hey were sympathetic to Mr. Sempier, . . . they weren't witnesses to th[e] event." *Id.*

Although Sempier's trial counsel may not have interviewed both Cuevas brothers or the Armstrongs or called Gillespie to testify, the Nevada Supreme Court reasonably determined that Sempier failed to demonstrate that his trial counsel was deficient or that he was prejudiced.

---

[2] James Cuevas testified at the post-conviction evidentiary hearing that he never spoke with Sempier's trial counsel. ECF No. 34-1 at 157.

*Strickland*, 466 U.S. at 688, 694; *see also United States v. Berry*, 814 F.2d 1406, 1409 (9th Cir. 1987) (denying an ineffective-assistance-of-counsel claim based on counsel's refusal to call witnesses because the defendant "offers no indication of . . . how their testimony might have changed the outcome of the hearing"); *Lewis v. Mazurkiewicz*, 915 F.2d 106, 113 (3d Cir. 1990) (explaining that "trial counsel [is] not bound by an inflexible constitutional command to interview every possible witness"; rather, "counsel [is] simply required to exercise reasonable professional judgment in deciding" who to interview). There is no indication in the record that Sempier's trial counsel was alerted to the need to interview possible witnesses, especially the Armstrongs, who were not present or mentioned regarding the evening in question. *See Babbitt v. Calderon*, 151 F.3d 1170, 1174 (9th Cir. 1998) ("[C]ounsel is not deficient for failing to find mitigating evidence if, after a reasonable investigation, nothing has put the counsel on notice of the existence of that evidence."). Indeed, Sempier's trial counsel testified that nobody contacted him to report that they had relevant information. *See* ECF No. 34-1 at 50–51. Moreover, as the Nevada Supreme Court reasonably noted, none of the witnesses actually claimed to have personal knowledge of the victim's truthfulness, so their testimony would not have been admissible even if they were interviewed. *See* Nev. Rev. Stat. § 50.085(2) ("Evidence of the reputation of a witness for truthfulness or untruthfulness is inadmissible."). As such, because the Nevada Supreme Court reasonably denied Sempier's ineffective-assistance-of-trial-counsel claim, Sempier is denied federal habeas relief for Ground 1(d).

### 5.    Ground 1(e): the victim's flirting

In affirming the denial of Sempier's state habeas petition, the Nevada Supreme Court held:

> Sempier argues that trial counsel should have called Sempier's cousin to testify that, during the evening preceding the sexual assault, the victim had been staring at Sempier and talking to him in a way the cousin found to be flirtatious. Sempier fails to demonstrate that counsel's performance was deficient or that he was prejudiced.

> Counsel elicited testimony at trial about the victim's interactions with Sempier on the evening of the sexual assault, and Sempier fails to demonstrate a reasonable probability of a different outcome at trial had the jury heard his cousin's characterizations of the victim's behavior as flirtatious. Therefore, the district court did not err in denying this claim.

ECF No. 37-11 at 6. The Nevada Supreme Court's rejection of Sempier's *Strickland* claim was neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court.

James Cuevas testified at the post-conviction evidentiary hearing that the evening before the sexual assault, the victim was intoxicated and flirting with Sempier. ECF No. 34-1 at 155. Cuevas explained that the victim "was staring at only [Sempier] the whole time" they were playing music. *Id.* at 156. Similarly, in an affidavit prepared for Sempier's post-conviction state proceedings, James Cuevas stated that the evening before the sexual assault, he saw the victim "making eye contact with [Sempier] and vice versa in a way [he] believe[d] to be very flirtatious." ECF No. 32-1 at 164. And, although not related to Sempier, Gillespie reported that "it ha[d] been [her] experience that [the victim] is always very flirtatious." ECF No. 32-1 at 161.

Even if Sempier's trial counsel was deficient for not investigating and calling Cuevas and Gillespie to testify about the victim's flirtatious behavior, the Nevada Supreme Court reasonably concluded that Sempier failed to demonstrate prejudice. *Strickland*, 466 U.S. at 694. The victim's behavior towards Sempier the night prior to the sexual assault was addressed extensively at trial. The victim testified that she showed Sempier her sketches, compared games on their cellular telephones, and offered to introduce Sempier to her single friend. ECF No. 26-1 at 41–42. And again during cross-examination, the victim testified that she chatted with Sempier, compared games on their cellular telephones while sitting closely together, showed him some of her sketches, and suggested that one of her girlfriends may be interested in meeting him. *Id.* at 95. The victim

also testified that she asked Sempier to "sing with [her] in the bathroom." *Id.* at 96–97. Accordingly, Sempier's trial counsel's testimony during the post-conviction evidentiary hearing that he "established at trial that [the victim] was flirtatious" towards Sempier (ECF No. 34-1 at 104–05) appears to be accurate, such that the introduction of addition testimony about the victim's behavior being characterized as "flirtatious" would not have rendered a different result at trial. Because the Nevada Supreme Court reasonably denied Sempier's ineffective-assistance-of-trial-counsel claim, Sempier is denied federal habeas relief for Ground 1(e).

### B.     Ground 2

In Ground 2, Sempier argues that his trial counsel failed to address the Sexual Assault Response Team examination of the victim or consult with, retain, and use an expert, such as Kathleen Peele, APN, CPNP, APH, to identify weaknesses in the victim's sexual assault examination. ECF No. 10 at 5, 55–57. Sempier also argues that his trial counsel failed to object to the State's closing argument about the examination, which misrepresented the evidence. *Id.* at 52–53, 55.

In affirming the denial of Sempier's state habeas petition, the Nevada Supreme Court held:

> Sempier contends that trial counsel should have objected to the SART nurse's reliance on outdated statistics or retained a rebuttal expert to testify that the injury to the victim was not indicative of sexual assault. Sempier fails to demonstrate that counsel's performance was deficient or that he was prejudiced. The nurse testified that the victim had a vaginal injury that was commonly caused by sexual penetration and was found in 70% of sexual assault victims. Counsel elicited testimony from the nurse that the statistic was from an old study, that new studies indicated the injury occurs just as often during consensual sex, and that she was unable to determine when the victim's injury occurred or whether it was caused by sexual assault as opposed to consensual sex. Because the issue at trial was not whether sex occurred, but rather whether the sex was consensual, Sempier fails to show that counsel's cross-examination of the nurse was inadequate or that further testimony about other causes of the vaginal injury would have been helpful to his defense. Therefore, the district court did not err by denying this claim.

> . . . Sempier argues that trial counsel should have objected during closing arguments to the State's misrepresentations of the SART nurse's testimony about the frequency of injury in sexual assault cases. Sempier fails to demonstrate that counsel's performance was deficient or that he was prejudiced. The State's closing argument did not mischaracterize the nurse's testimony, and counsel addressed the statement and emphasized the nurse's testimony that the injury did not prove lack of consent. Therefore, the district court did not err by denying this claim.

ECF No. 37-11 at 7–8. The Nevada Supreme Court's rejection of Sempier's *Strickland* claim was neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court.

Debbie Robison, a sexual assault nurse examiner, testified that she performed a sexual assault examination on the victim on the morning of August 26, 2011. ECF No. 27-1 at 131, 139. The victim "had a tear to her posterior fourchette." *Id.* at 142. Robison explained that this injury could come from "having consensual relations," and when asked how often victims of sexual assault get an injury like that, she explained, "[t]he stats are kind of all over the place but . . . of all sexual assault examinations, about 70 percent have a posterior fourchette injury." *Id.* at 145. The victim indicated to Robison that she "had had consensual relations with her husband . . . two days prior to her examination." *Id.* at 144. During cross-examination by Sempier's counsel, Robison testified that she could not "date when [the] tear occurred" and could not "tell how it occurred." *Id.* at 155. When asked about the statistics she referenced during direct examination, Robinson explained:

> [T]he statistics we use are, again, from a study from 1997, there's new studies out in 2010, 2011 that indicate that there's as much injury with consensual sex as there is with non-consensual sexual activities. There's some studies that . . . say that in some cases they did a study where they had women withhold from sex three days, then they checked them for injury and in 11 percent of those they still have injuries, so apparently we injure ourselves frequently and we don't even know it. And then there's some studies who say that there's just as much injury in consensual sex as there is non-consensual sex, however, in consensual sex you may have one injury versus in non-consensual sex you'll have more than one injury. So basically what

the general consensus is is [sic] there aren't any studies big enough with enough control to be able to say for certainty what - - you know, that this is definitely injury secondary to sexual assault and this is definitely injury that is more consistent with consensual sexual activity.

*Id.* at 156.

Later, the State made the following statements during its closing argument regarding Robison's testimony:

What else did SART nurse Roberson [sic] tell you that's a golden nugget? There was a tear on the posterior fourchette. Now, she went into a bunch of illustrations, but it doesn't negate the fact that she testified that that occurs at 70 percent of the time in sexual assaults. That's a golden nugget.

ECF No. 28-3 at 24. In response, Sempier's trial counsel made the following comment during his closing argument:

This tear identified by Nurse Roberson [sic], you know, take it for what it's worth. According to her, it was only the distance between your fingernail - - her fingernails in size. It was an of unknown age, it was of unknown cause. And perhaps most importantly, she said that this type of injury is common, very common in consensual sex. It's not proof of some kind of unlawful rape. A tear like that does not prove lack of consent.

*Id.* at 42.

During Sempier's post-conviction evidentiary hearing, Sempier's trial counsel explained that he "wasn't impressed with [Robison's] opinion" because she relied on "fuzzy science" during her testimony, explaining to the jury that "the statistics are all over the place about this." ECF No. 34-1 at 60–61. Sempier's trial counsel emphasized that Robison also "testified that it was equally as likely that whatever this injury was, as minor as it was, that it could have occurred during the course of consensual sex." *Id.* at 61. Due to this testimony, Sempier's trial counsel believed that "[t]he cross-examination of her went [his] way," that Robison did not "mak[e] a big impression" on the jury, and Robison's testimony did not have "a lot of impact." *Id.* at 61, 63-64.

Sempier included an affidavit of Kathleen M. Peele, APN, C-PNP, APH, in his supplemental state habeas petition. ECF No. 30-1 at 138. In that affidavit, dated February 4, 2015, Peele, "a licensed pediatric nurse practitioner with specific training and qualifications with respect to sexual assault examinations," reviewed the applicable documents and videotape of the victim's sexual assault examination and concluded that she was "unable to substantiate a tear to [the victim's] posterior fourchette," instead reporting that it "appear[ed] to be a small tear to [the victim's] fossa novicularis." *Id.* Peele explained that "[b]ecause such an injury can be caused by consensual sexual intercourse, and based upon [the victim's] report of sexual activity two days prior to the exam, it cannot be ruled out that the tear at issue was caused by the prior reported sexual activity." *Id.* at 139. Peele also explained that "there is absolutely no credible scientific basis to claim that such injuries occur in seventy percent (70%) of sexual assaults." *Id.* Peele believed that Robison should have also "include[d] an inspection and report as to the anus" and cervix. *Id.* Finally, Peele "question[ed] that the tear at issue could have been caused by sexual intercourse undertaken from behind and under the circumstances [the victim] reported." *Id.*

Peele testified in a similar fashion at the post-conviction evidentiary hearing, but she further explained that more information regarding the timing of the victim's injury could have been established if she had been "brought back for a reexamination." ECF No. 34-1 at 205. Peele also testified that the victim's injury was minor, that the victim's injury as "more consistent with the sexual position [the victim] reported having with her husband," and that in a consensual sexual encounter "you will see at least two or more injuries." *Id.* at 206, 230, 232.

The Nevada Supreme Court reasonably determined that Sempier failed to demonstrate that his trial counsel was deficient regarding cross-examining Robison or not obtaining an expert to counter Robison's testimony. *Strickland*, 466 U.S. at 688. As the Nevada Supreme Court

1    reasonably noted, Sempier's trial counsel effectively cross-examined Robison. *See Harrington*,

2    562 U.S. at 111 ("In many instances cross-examination will be sufficient to expose defects in an

3    expert's presentation.") In fact, Sempier's trial counsel got Robison to admit that she could not tell

4    how the victim's injury occurred, that newer statistics show "that there's as much injury with

5    consensual sex as there is with non-consensual sexual activities," and that non-consensual sexual

6    activity usually results in more than just one injury. ECF No. 27-1 at 155–56.

7          Further, while Peele's testimony was contradictory to Robison is some respects, it cannot

8    be concluded that Sempier's trial counsel was deficient for not calling a rebuttal witness like Peele.

9    *See Harrington*, 562 U.S. at 111 ("*Strickland* does not enact Newton's third law for the

10   presentation of evidence, requiring for every prosecution expert an equal and opposite expert from

11   the defense."); *Duncan v. Ornoski*, 528 F.3d 1222, 1235 (9th Cir. 2008) ("[W]hen the prosecutor's

12   expert witness testifies about pivotal evidence or directly contradicts the defense theory, defense

13   counsel's failure to present expert testimony on that matter may constitute deficient

14   performance."). Peele's testimony may have been beneficial to Sempier's defense,[3] but that does

15   not change the fact that Sempier's trial counsel was able to effectively cross-examine Robison to

16   rebut the State's case, negating any alleged requirement that he call an expert of his own.

17         Turning to the State's comments during closing argument, the Nevada Supreme Court

18   again reasonably determined that Sempier's trial counsel was not deficient. *Strickland*, 466 U.S.

19   at 688. First, the State did not mischaracterize Robison's testimony—rather it only focused on the

20   portion of her testimony that was helpful to it: the older statistics regarding the victim's injury. *See*

21   ECF No. 28-3 at 24. Second, Sempier's trial counsel refuted the State's closing argument during

22

23

---

[3] For example, Peele's testimony that the victim's injuries were more consistent with the sexual position she used with her husband would certainly have been helpful to Sempier's defense.

1   his rebuttal argument, pointing out that Robison testified that the victim's injury was "very

2   common in consensual sex." *Id.* at 42.

3          Accordingly, because the Nevada Supreme Court reasonably denied Sempier's ineffective-

4   assistance-of-trial-counsel claim, Sempier is denied federal habeas relief for Ground 2.

5          **C.      Ground 3**

6          In Ground 3, Sempier argues that his trial counsel should have presented a reasonable-

7   mistaken-belief-of-consent defense in addition to a consent defense. ECF No. 10 at 7, 58, 60. In

8   affirming the denial of Sempier's state habeas petition, the Nevada Supreme Court held:

9          Sempier argues that trial counsel should have presented and requested a jury
           instruction on the defense of a reasonable mistaken belief of consent. Sempier fails
10         to demonstrate that counsel's performance was deficient. Given Sempier's trial
           testimony that the victim initiated the sexual intercourse and that he was "100%
11         positive" that the victim knew it was him and not her husband, it was not objectively
           unreasonable for trial counsel to argue consent, rather than a mistaken belief in
12         consent, as the theory of defense. Therefore, the district court did not err in denying
           this claim.

13

14  ECF No. 37-11 at 8. The Nevada Supreme Court's rejection of Sempier's *Strickland* claim was

15  neither contrary to nor an unreasonable application of clearly established law as determined by the

16  United States Supreme Court.

17         As was noted previously, Sempier testified at trial that as he was exiting the restroom on

18  the morning of August 26, 2011, he heard the victim ask from the master bedroom, "Where did

19  you guys go?" ECF No. 27-1 at 252. Sempier entered the master bedroom and told the victim that

20  he and her husband had gone to "[t]he bar." *Id.* After Sempier followed the victim's request to lay

21  next to her in bed, the victim asked where her husband was located, and when Sempier told her

22  that he was asleep in the living room, the victim said, "Oh. Well, scoot closer." *Id.* at 252–53.

23  ///

1  Sempier later testified that he was "100 percent positive that [the victim] saw [him] walk in the

2  room because she was looking right at [him]." *Id.* at 289.

3        Sempier's trial counsel testified at the post-conviction evidentiary hearing that he presented

4  a consent defense, arguing that the victim "had flirted with [Sempier]" and "that the DNA arrived

5  there in a consensual manner." ECF No. 34-1 at 41, 70. Sempier's trial counsel explained that there

6  was no mistaken belief of consent because Sempier "testified that he was a hundred percent sure

7  that [the victim] knew who it was, that she looked right at him that morning." *Id.* at 69, 85. Indeed,

8  Sempier's trial counsel testified that he could not "really get [his] head around how" a mistaken

9  belief of consent defense would work because "mistaken consent would . . . be inconsistent with

10  th[e] factual basis that [he was] advancing." *Id.* at 87.

11        A mistaken belief of consent defense could have been presented at Sempier's trial. *See*

12  *Carter v. State*, 121 P.3d 592, 956 (Nev. 2005) ("[A] reasonable mistaken belief as to consent is a

13  defense to a sexual assault charge."). However, due to Sempier's own testimony at trial, the

14  Nevada Supreme Court reasonably concluded that Sempier failed to demonstrate that his trial

15  counsel was deficient for failing to present this defense. *Strickland*, 466 U.S. at 688.

16        Sempier's mistaken belief of consent defense is apparently based on the victim's testimony

17  that she initially believed that the sexual encounter was with her husband. However, because

18  Sempier testified that the victim asked him where her husband was located, that the victim looked

19  right at him, and that he was positive that the victim knew it was him, a mistaken belief of consent

20  defense was not supported by the evidence and would not have been reasonable. Therefore,

21  because Sempier's trial counsel chose to present a consent defense, which was reasonable based

22  on Sempier's testimony, it cannot be concluded that Sempier's trial counsel was deficient. *See*

23  *Phillips v. Woodford*, 267 F.3d 966, 979 (9th Cir. 2001) ("[D]efense counsel does not have an

obligation to pursue an alternative, conflicting defense once he *reasonably* selects the defense to present at trial." (emphasis in original)); *see also Tuck v. White*, 116 F.3d 1264 (9th Cir. 1997) ("[O]nce [counsel] reasonably selected the self-defense theory, his duty to investigate the competency defense, which directly conflicted with the self-defense theory, ended."); *cf. Rios v. Rocha*, 299 F.3d 796, 806 (9th Cir. 2002) ("[A]ny decision to forgo a defense on the basis of unreasonable assumptions is not a reasonable decision or a strategic or tactical decision entitled to deference.").

Because the Nevada Supreme Court reasonably denied Sempier's claim that his trial counsel was deficient regarding failing to present an alternative defense, Sempier is denied federal habeas relief for Ground 3.

### D.     Ground 4

In Ground 4, Sempier argues that his trial counsel failed to oppose or otherwise address the State's motion in limine, which sought to preclude the introduction of evidence that the victim had prior convictions for driving under the influence and domestic battery. ECF No. 10 at 9. Sempier argues that his trial counsel should have especially opposed the motion regarding the domestic battery because it epitomized the fact that the victim and her husband were not an emotionally healthy couple. *Id.* at 64.

In affirming the denial of Sempier's state habeas petition, the Nevada Supreme Court held:

Sempier argues that trial counsel should have opposed the State's motion in limine to preclude evidence of a domestic-violence incident between the victim and her husband occurring after the sexual assault. [Footnote 1: Sempier also argues that trial counsel should have opposed the State's motion in limine to preclude evidence of the victim's prior DUI conviction, but Sempier concedes on appeal that he was not prejudiced by counsel's inaction and makes no further argument with respect to that claim. *See Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987) (declining to consider claims not supported by cogent argument).] Sempier fails to demonstrate that counsel's performance was deficient or that he was prejudiced. At the evidentiary hearing, trial counsel explained that he chose not to oppose the

State's motion because he had concerns about the admissibility and relevance of the physical altercation between the victim and her husband. Sempier fails to demonstrate that this decision was objectively unreasonable. Therefore, the district court did not err in denying this claim.

ECF No. 37-11 at 6–7. The Nevada Supreme Court's rejection of Sempier's *Strickland* claim was neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court.

Prior to trial, the State moved to preclude Sempier "from questioning witnesses regarding [the] victim's prior criminal conviction [for driving under the influence of alcohol] and subsequent domestic violence investigation and arrest." ECF No. 25-15 at 2. Later, at a hearing to confirm Sempier's trial, Sempier's trial counsel informed the state district court that "the motion in limine pending is not going to be objected to." ECF No. 25-17 at 5. Based on the lack of an objection, the state district court granted the State's motion. *Id.* at 6.

Sempier's trial counsel testified at the post-conviction evidentiary hearing that he was aware of the victim's DUI conviction and domestic battery arrest. ECF No. 34-1 at 41–42. The domestic battery "was after the allegation of the sexual assault," and Sempier's trial counsel believed "it was mutual violence," although the victim's husband "received the worst of it and was transported for triage by emergency staff resulting in stitches." *Id.* at 43–44. The cause of the domestic violence incident was the victim being "upset over the way her husband had responded to her allegation of sexual assault." *Id.* at 45. Sempier's trial counsel explained that he did not object to the motion because he came to the following agreement with the State: he would not introduce evidence of the victim's DUI or domestic violence incident if the State did not introduce evidence of Sempier's prior misdemeanor conviction. *Id.* at 49. Sempier's prior misdemeanor

///

27

conviction was for "outraging public decency" and "involved taking photographs of underage people involved in sex acts." *Id.* at 46–47.

Regarding his deal with the State, Sempier's trial counsel explained that he did not think that the victim's DUI conviction would have been admissible and thought that there was only "tenuous" evidentiary value regarding the victim's domestic battery arrest since "it certainly never resulted in a conviction for whatever reason," it was not contemporaneous with the sexual assault at issue, and it did not involve Sempier. *Id.* at 49–50, 101. Regarding Sempier's misdemeanor conviction, Sempier's trial counsel did not think it would have necessarily been admissible except "[p]otentially if it was some prior bad act." *Id.* at 98.

The Nevada Supreme Court reasonably determined that Sempier failed to demonstrate prejudice regarding his trial counsel's alleged deficiency for not objecting to the State's motion in limine. *Strickland*, 466 U.S. at 688. Sempier fails to demonstrate that the victim's domestic violence arrest and DUI conviction[4] would have been admissible even if his trial counsel has opposed the motion in limine. Although the alleged cause of the fight between the victim and her husband was the victim's concerns over her husband's reaction to the sexual assault, the domestic battery arrest itself was otherwise unrelated to the sexual assault, such that Sempier fails to demonstrate that the state district court would have found it to be relevant or admissible. *See* Nev. Rev. Stat. § 48.015 ("'[R]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence."); *see also* Nev. Rev. Stat. § 50.085(3) ("Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's credibility,

---

[4] Nevada law provides that "evidence that the witness has been convicted of a crime is admissible but only if the crime was punishable by death or imprisonment for more than 1 year under the law under which the witness was convicted." Nev. Rev. Stat. § 50.095(1).

other than conviction of crime, may not be proved by extrinsic evidence. They may, however, *if relevant to truthfulness*, be inquired into on cross-examination of the witness." (Emphasis added)). Indeed, the Nevada Supreme Court, the final arbiter of Nevada law, concluded that Sempier failed to demonstrate that his trial counsel's decision to not oppose the motion due to concerns about admissibility and relevance under Nevada law was objectively unreasonable. Therefore, because the Nevada Supreme Court reasonably denied Sempier's ineffective-assistance-of-trial-counsel claim, Sempier is denied federal habeas relief for Ground 4.

### E.      Ground 5

In Ground 5, Sempier argues that the State relied on the victim's testimony, which it should have known was false, or, alternatively, his trial counsel failed to address inconsistencies in the victim's testimony. ECF No. 10 at 11, 67–68. Sempier notes the following inconsistencies in the victim's story: she could not account for how she got into bed on her own, she claims that her leg was wiped with a tissue but the tissue she presented to law enforcement had no semen on it, she was inconsistent about where Sempier ejaculated, she testified at the preliminary hearing that there was no time for Sempier to have gone to the bathroom to have gotten a tissue even though her trial testimony stated that Sempier retrieved tissue from the bathroom, her testimony that she did not wake up during the sexual encounter was not feasible in light of her testimony that she was awoken by Sempier "pulling out," she was inconsistent in describing the lighting at the time of the encounter, she was inconsistent about her reaction to the assault, she said she did not believe she flirted with Sempier even though her actions proved otherwise, and she downplayed her relationship with Sempier. *Id.* at 68–72.

In affirming the denial of Sempier's state habeas petition, the Nevada Supreme Court held:

> Sempier argues that trial counsel should have objected to the prosecution's knowing use of false testimony and should have addressed the inconsistencies in that

testimony. Sempier fails to demonstrate that counsel's performance was deficient or that he was prejudiced. His claim regarding the prosecution's knowing use of false testimony is based on an assumption that the victim was lying. Sempier fails to demonstrate that the victim provided false testimony, and thus fails to demonstrate that counsel was ineffective for failing to make this argument. Furthermore, counsel cross-examined the victim about numerous inconsistencies in her testimony, and Sempier fails to show that counsel's failure to inquire about other inconsistencies was objectively unreasonable or that there was a reasonable probability of a different outcome had counsel made such inquiries at trial. Therefore, the district court did not err in denying this claim.

ECF No. 37-11 at 8. The Nevada Supreme Court's rejection of Sempier's claim was neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court.

"[A] conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." *Napue v. Illinois*, 360 U.S. 264, 269 (1959). This rule applies "when the State, although not soliciting false evidence, allows it to go uncorrected when it appears" and when "the false testimony goes only to the credibility of the witness." *Id.* A *Napue* violation claim will succeed when "(1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) the false testimony was material." *Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005) (internal quotation marks and alternation omitted). "[A] conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976).

As the Nevada Supreme Court reasonably noted, Sempier's false testimony claim is based on his argument that the victim was lying about the sexual assault. Although inconsistencies in the victim's testimony may affect her credibility, they do not demonstrate that she lied about the sexual

assault. Instead, the jury, as the factfinder, was called to determine who it believed was telling the truth: the victim or Sempier. Accordingly, it is not clear that the State presented evidence that was "actually false." *Hayes*, 399 F.3d at 984.

This Court now turns to Sempier's argument that his trial counsel failed to address inconsistencies in the victim's testimony. During cross-examination, the victim testified that she closed her bedroom door behind her when she went to bed on August 25, 2011. ECF No. 26-1 at 99. Sempier's trial counsel asked the victim to review her preliminary hearing testimony, at which point the victim explained that "[a]t that time I responded that I don't remember." *Id.* Sempier's trial counsel then asked the victim whether the light was on in her bedroom when she went to bed, and the victim responded in the negative. *Id.* at 101. However, after having the victim again review her preliminary hearing transcript, the victim admitted that she previously testified that the light was on. *Id.* at 102. Next, after the victim testified that she went to sleep on the floor, Sempier's trial counsel asked how she got into bed, and the victim testified that she did not remember. *Id.* at 106. Further, the victim testified that she felt "the tissue wiping [her] leg off" a "couple seconds after the penetration" ended. *Id.* at 111. Sempier trial counsel then clarified, "wasn't it your testimony earlier today that you heard toilet paper rattling in the bathroom" before feeling the tissue paper. *Id.* at 112. The victim responded in the affirmative and explained that she heard the toilet paper "right before the tissue was wiping off my leg." *Id.* Finally, as noted in Ground 1(e), Sempier's trial counsel asked the victim about her interactions with Sempier the night before the sexual assault, implying that she was flirting with him. *See* ECF No. 26-1 at 95–97 (getting the victim to admit that she chatted with Sempier, compared games with him on their cellular telephones while sitting closely together, showed him some of her sketches, and asked him to sing with her in the bathroom).

1    It is true that Sempier's trial counsel did not bring forth all of the alleged inconsistencies

2  in the victim's previous accounts of the sexual assault, as detailed by Sempier. However, the

3  Nevada Supreme Court reasonably determined that Sempier failed to demonstrate prejudice.

4  *Strickland*, 466 U.S. at 694. As noted, Sempier's trial counsel went through a number of

5  inconsistencies in the victim's testimony, such that the Nevada Supreme Court reasonably

6  determined that Sempier fails to demonstrate that pointing out further inconsistencies would have

7  rendered a different verdict, especially since none of the remaining alleged inconsistencies were

8  especially consequential in casting doubt on the remainder of the victim's testimony. *See Doe v.*

9  *Ayers*, 782 F.3d 425, 431 (9th Cir. 2015) (concluding that the defendant's trial counsel "could have

10  done a much better job of impeaching [the witness], . . . but the failures regarding impeachment of

11  [the witness] are of comparatively little consequence").

12    Because the Nevada Supreme Court reasonably denied Sempier's false evidence and

13  ineffective-assistance-of-trial-counsel claims, Sempier is denied federal habeas relief for Ground

14  5.

15    **F.    Ground 6**

16    In Ground 6, Sempier argues that there was cumulative error regarding his trial counsel's

17  ineffectiveness. ECF No. 10 at 13. In affirming the denial of Sempier's state habeas petition, the

18  Nevada Supreme Court held: "Even assuming that multiple deficiencies in counsel's performance

19  may be cumulated to establish prejudice, *see McConnell v. State*, 125 Nev. 243, 259, 212 P.3d

20  307, 318 (2009), Sempier has not demonstrated any deficient performance, and thus there is

21  nothing to cumulate." ECF No. 37-11 at 9. This ruling was reasonable.

22    Cumulative error applies where, "although no single trial error examined in isolation is

23  sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors may still

32

prejudice a defendant." *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996); *see also Parle v. Runnels*, 387 F.3d 1030, 1045 (9th Cir. 2004) (explaining that the court must assess whether the aggregated errors "so infected the trial with unfairness as to make the resulting conviction a denial of due process" (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). This Court has not identified any definite errors on the part of Sempier's trial counsel, so there are no errors to cumulate. Sempier is denied federal habeas relief for Ground 6.

### G.    Ground 7

In Ground 7, Sempier argues that his appellate counsel filed an ineffective appeal. ECF No. 10 at 15, 77. Sempier elaborates that his trial counsel, who became his appellate counsel, failed to object to several issues, thereby failing to preserve those issues on appeal. *Id.* at 78. For example, Sempier alleges that his trial counsel failed to object when Sempier was called a predator, when the testimony of the nurse was misstated, and to the motion in limine. *Id.* at 78-79.

In affirming the denial of Sempier's state habeas petition, the Nevada Supreme Court held:

> Sempier argues that trial counsel was ineffective for failing to preserve errors for appeal and for raising a non-meritorious claim on direct appeal. Sempier does not provide specific argument as to any errors that were not preserved, but instead relies on the claims of ineffective assistance addressed previously. He fails to demonstrate that counsel was deficient on appeal or that he was prejudiced by counsel's performance. *See Kirksey v. State*, 112 Nev. 980, 998, 923 P.2d 1102, 1114 (1996) (applying the *Strickland* standard to claims of ineffective assistance of appellate counsel). Therefore, the district court did not err in denying this claim.

ECF No. 37-11 at 8-9. The Nevada Supreme Court's rejection of Sempier's *Strickland* claim was neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court.

At Sempier's post-conviction evidentiary hearing, Sempier's trial counsel testified that he "may have" looked at other issues to raise on appeal, but he "didn't perceive any . . . error"

regarding evidentiary rulings. ECF No. 34-1 at 72. Sempier's trial counsel was "cognizant of the fact that to preserve an appellate record, [he] would have to make a good trial record." *Id.* at 73. However, regarding an appeal, Sempier's trial counsel explained that he was "not of the opinion to throw everything in." *Id.* at 90-91.

Sempier only alleges three specific instances where his trial counsel failed to object and failed to include the issue on appeal: when the State called Sempier a predator, when the State misstated the testimony of Robison during closing argument, and when the State filed its motion in limine. Because the second and third instances were brought forth in Sempier's state habeas proceedings and were denied by the Nevada Supreme Court, Sempier fails to demonstrate that the Nevada Supreme Court would have granted Sempier's direct appeal had these issues instead been included there and reviewed under a harmless error standard. *See* Nev. Rev. Stat. § 178.598 (explaining that if a defendant objected to a potential error at trial, the appellate court reviews for harmless error: "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded"). Lastly, it was not objectionable for the State to characterize Sempier as a "predator." "[T]he law permits the prosecution considerable latitude to strike 'hard blows' based on the evidence and all reasonable inferences therefrom." *United States v. Rude*, 88 F.3d 1538, 1548 (9th Cir. 1996) (finding government's conduct acceptable after it referred to the defendants "as 'crooks' or 'evil' at least eleven times; used terms or phrases such as 'con man,' 'charlatans,' 'trolling around for victims,' 'lie,' 'lies,' or 'lied' over 90 times; and also used words such as 'Ponzi Scheme,' 'practicing their craft,' 'perfecting their craft,' and 'victim'"). Accordingly, the Nevada Supreme Court reasonably denied Sempier's ineffective-assistance-of-trial-counsel and ineffective-assistance-of-appellate-counsel claim. *Strickland*, 466 U.S. at 688, 694; *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (explaining that the *Strickland* standard is also utilized to

review appellate counsel's actions: a petitioner must show "that [appellate] counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them" and then "that, but for his [appellate] counsel's unreasonable failure to file a merits brief, [petitioner] would have prevailed on his appeal"). Sempier is denied federal habeas relief for Ground 7.

## IV.    CERTIFICATE OF APPEALABILITY

This is a final order adverse to Sempier. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this Court issue or deny a certificate of appealability (COA). Therefore, this Court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002). Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id*. Applying these standards, this Court finds that a certificate of appealability is warranted for the claim that Sempier's trial counsel was ineffective for failing to employ an expert and for the claim that Sempier's trial counsel was ineffective for failing to adequately impeach the victim.

## V.    CONCLUSION

IT IS THEREFORE ORDERED that the Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody (ECF No. 10) is DENIED.

///

IT IS FURTHER ORDERED that Petitioner is granted a certificate of appealability for the claim that Petitioner's trial counsel was ineffective for failing to employ an expert and for the claim that Petitioner's trial counsel was ineffective for failing to adequately impeach the victim.

IT IS FURTHER ORDERED that the Clerk of the Court is directed to enter judgment accordingly.

Dated:  November 12, 2020.

ROBERT C. JONES
UNITED STATES DISTRICT JUDGE